## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -

THE GERFFERT COMPANY, INC., AND
STEPHEN PANIGEL                                  1:09-CV-00266-KAM-CLP

       Plaintiffs,                       X
                                                 :
   -against-                                     :
                                                 :
JAMES DEAN, ANDREA BONELLA, DOLORES              :
KING, WILLIAM J. HIRTEN CO., LLC., MARIO         :
BONELLA, GIANFRANCO BONELLA, "JOHN               :
DOE" AND "JANE DOE," DOING BUSINESS AS           :
FRATELLI BONELLA, FRATELLI BONELLA,              :
SRL AND HMH RELIGIOUS                            :
MANUFACTURING CO., INC.,                         X

      Defendants,

- - - - - - - - - - - - - - - - - - - -

## MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL

## I.    INTRODUCTION

Since at least 2003, and continuing even today, Mark Horowitz has been representing both the plaintiffs in this action -- The Gerffert Company, Inc. and Stephen Panigel – as well as several of the defendants – Fratelli Bonella, srl, Andrea Bonella, Mario Bonella and Gianfranco Bonella (collectively, "the Bonellas").  While some of Mr. Horowitz's simultaneous representation of these parties was pursuant to the parties' waiver of the obvious conflict, that waiver explicitly excludes situations like this one—where Gerffert and the Bonellas are directly adverse to each other.  In such instances, both the agreements among the parties and the Rules of Professional Conduct forbid concurrent representation—especially without any waiver.  Thus, the "per se rule" adopted by New York courts applies and Plaintiffs' counsel must be disqualified from participating in this case.

Even under the more lenient standard – the "substantial relationship test," Plaintiffs' counsel must be disqualified.  Mr. Horowitz, through his representation of the Bonellas, has obtained significant confidential information that has a substantial relationship to the matter currently litigated.  He now seeks to use that information to help his other clients, Mr. Panigel and The Gerffert Company, Inc.  He has done so in conjunction with Mr. Magnotti, with whom he has associated for the purpose of this matter.  As a two-man-shop for the purpose of this litigation, and as demonstrated by the correspondence in this case, there is no question that they have both worked on this case and as such, have both been the recipient of the Bonellas' confidential information.  As such, they must both be disqualified.[1]

---

[1] As per the Court's directive at the October 26, 2010 Settlement Conference, this motion only addresses the issue of disqualification.  The issue of dismissal, should it become ripe, will be briefed at a later time.

II.     **DISQUALIFICATION PRESERVES THE INTEGRITY OF THE ADVERSARY PROCESS**

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.' " *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (*citing Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). In exercising this power, the Court must "attempt[ ] to balance a client's right freely to choose his counsel against the need to maintain the highest standard of the profession." *Hempstead Video, Inc., supra,* 409 F.3d at 132 (internal quotations and citations omitted).

In the Eastern District, ethical standards are governed by the New York State Lawyer's Code of Professional Responsibility ("NYSLCPR"). *See* Local Civil Rule 1.3. Canon 5 of the NYSLCPR states that "[a] lawyer should exercise independent professional judgment on behalf of a client." Canon 9 requires that "[a] lawyer should avoid even the appearance of professional impropriety." Similarly, DR 5-105 provides that:

> (A) A lawyer shall decline proffered employment if the exercise of [the lawyer's] independent professional judgment on behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve [the lawyer] in representing differing interests, except to the extent permitted under DR 5-105(C).

> (B) A lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by [the lawyer's] representation of another client, or if it would be likely to involve [the lawyer] in representing differing interests, except to the extent permitted under DR 5-105(C).

> (C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that [the lawyer] can adequately represent the interest of each *and if each consents to the representation after full disclosure of*

> *the possible effect of such representation on the exercise of [the lawyer's]*
> *independent professional judgment on behalf of each.*

N.Y. Comp. Codes R. & Regs. Tit. 22, § 1200.24 (emphasis added)

Thus, " '[a]s a matter of professional responsibility, an attorney owes a duty of loyalty to his client ... not to divulge confidential communications ... and not to accept representation of a person whose interests are opposed to the client.' " *Ehrich v. Binghamton City Sch. Dist.*, 210 F.R.D. 17, 23 (N.D.N.Y. 2002) (emphasis added) (*quoting In re Agent Orange Product Liability Litigation*, 800 F.2d 14, 17 (2d Cir. 1986)).

## III.   HOROWITZ'S SIMULTANEOUS REPRESENTATION OF BONELLA AND PLAINTIFFS REQUIRES DISQUALIFICATION

Whether or not disqualification is warranted is subject to the court's discretion. *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990).  In exercising that discretion, Courts in the Second Circuit apply one of two distinct rules with respect to disqualification. The more stringent of the two, known as the "per se rule," pertains to situations involving the continuous, simultaneous and/or concurrent representation of clients. *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976) (hereinafter "Cinema 5"). The second rule, requiring the courts to apply a "substantial relationship" test, applies in two situations: (1) when disqualification concerns a former client; and (2) for cases of vicarious or attenuated representation. *Id.*; *see also Hempstead Video*, *supra*, 409 F.3d at 130. Unlike the substantial relationship test, the purpose of which is to "prevent the possibility that the former clients confidences will be used to his [or her] disadvantage," *Ehrich*, *supra*, 210 F.R.D. at 24, the per se test mandates that adverse representation of a current client is in and of itself improper and requires disqualification.

In order to determine which of the two tests to apply, the status of the relationship is assessed at the time that the conflict arises, not at the time that the motion to disqualify is presented to the court. *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 435 F.Supp. 84, 95

(S.D.N.Y.), *aff'd in part, rev'd in part on other grounds*, 567 F.2d 225 (2d Cir. 1977); *see also Ehrich, supra*, 210 F.R.D. at 26 ("The per se rule applies if an attorney simultaneously represents clients with differing interests even though the representation ceases prior to the filing of the disqualification motion."). Otherwise, the subject attorney or law firm could easily transform the relationship from "continuing" to "former" by abandoning one of her clients, thereby securing application of the more lenient "substantial relationship" test. *Fund of Funds, Ltd. v. Arthur Andersen & Co., supra*, 435 F.Supp. at 95.

Here, the conflict arose in November 2008 at the latest, when Gerffert took its aggressive stance against the Bonella entities and the other parties involved in this case, and confirmed that it had consulted with counsel and would file a lawsuit. Specifically, on November 18, 2008, Gerffert's owner and president, Stephen Panigel, wrote to James Dean, another defendant in this case, complaining of the very issues that were alleged in their Complaint filed in this case just two months later. *See* Declaration of James Dean, Ex. A. Certainly, the conflict continued upon the filing of the Complaint on January 22, 2009.

## IV.   THE CONFLICT ISSUE MUST BE RESOLVED USING THE PER SE TEST

It has become clear that Mr. Horowitz has been involved in dual representation in this case since at least 2003 and continuing through the filing of this case. In a letter dated June 14, 2010, Mr. Magnotti admits to this Court that "Mark Horowitz is Gerffert's in-house counsel, and has been for over 20 years. He is an integral part of the Gerffert team. He will continue to assist in this case." June 14, 2010 Letter to Judge Pollak. Although the designation as "in-house counsel" does not quite comport with the facts as stated on the New York State Bar's website,[2] it

---

[2] Of further interest, and as a further indicator that Mr. Horowitz does not believe that the "Rules" apply to him, he is improperly before this Court. Closer review of the Appellate Division's records shows that Mr. Horowitz is "DELINQUENT." What this means is that Mr. Horowitz is potentially not admitted to practice before this Court. "Attorneys on the Default Lists who remain in noncompliance with Judiciary Law §468 and fail to register and pay all outstanding fees, or provide proof of prior registration and payment of such fees, within thirty
(footnote continued)

is beyond doubt that Mr. Horowitz has continuously represented Gerffert, the Plaintiff in this case, in some manner, for the past twenty years.

Yet, during that same time period, Mr. Horowitz has also been representing the Bonella entities. That representation has been continuing since at least 2003. On March 18, 2003, Mr. Horowitz sent a letter to Barton Cotton, Inc., a seller of religious artifacts, and begins the letter as follows: "Gentlemen, I am the attorney for Fratelli Bonella, S.r.l., of Milan, Italy. Fratelli Bonella is the copyright proprietor of the subject entitled "Stations of the Cross", which was recently published by you and offered for sale without authority or permission to do so (copy enclosed). It further appears that you have associated your trademark with this proprietary subject in violation of federal unfair competition statutes." *See* Declaration of Andrea Bonella, Ex. A, Letter to Barton Cotton, March 18, 2003.

That representation has never ceased. To wit, the Bonella entities have never received a cessation of service communication from Mr. Horowitz. In fact, quite the contrary is true. As of December 2008, the Bonella entities were still receiving invoices for Mr. Horowitz's services on a "retainer." Exhibit B to the Declaration of Andrea Bonella, filed herewith, shows invoices "To Professional Services Rendered" of $7,500 per quarter, ending on December 1, 2008. Further communications between Mr. Horowitz and the Bonella entities demonstrate that, rather than ending the relationship in late 2008, Mr. Horowitz continued on as the Bonnella's attorney on an "hourly" basis. Mr. Horowitz states, on December 10, 2008: "If you wish to pay me on an hourly basis beginning next year, that would be fine." Email Between Horowitz and Mario Bonella, December 10, 2008. *See* Declaration of Andrea Bonella, Ex. C. According to Mr. Horowitz himself, as of December 2008, Mr. Horowitz represented both the Gerffert Company, Inc. and the Bonella entities.

---

days of the last date the notice appears in the New York Law Journal, are subject to immediate suspension by order of the Court."

**V.     MR. HOROWITZ DISREGARDED HIS DUTIES TO THE PARTIES AND THE COURT IN ORDER TO PROVIDE PLAINTIFF WITH A TACTICAL ADVANTAGE**

The conflict between Plaintiffs and the Bonella entities is not new to Mr. Horowitz.  In October 2007, he was well aware that his dual representation created a conflict and, as such, that he needed (at least) a conflict waiver.  He writes: "Patrick Del Duca sent me an e-mail in which he said that you and he would like me to become involved in negotiations between Fratelli Bonella and Steve [Panigel].  **Certainly, I am always willing to offer you my legal guidance and if I can be of any help in finding a solution to this problem between you and Steve [Panigel], I would be very happy to do so.  I informed Patrick that I would need a new 'conflict waiver' letter, because the letters that you and Steve [Panigel] signed last year do not cover the present situation."** *See* Declaration of Andrea Bonella, Ex. D – Email Between Mark Horowitz and Mario Bonella, December 10, 2008 (emphasis added).

Not only do the conflict waivers signed "last year" not cover the present situation, those conflict waivers firmly establish the need to disqualify Mr. Horowitz in this case.  The 2007 Conflict Waiver, attached as Exhibit D to the Declaration of Andrea Bonella, defines the scope of the representations.  It states:

> Fratelli Bonella, s.r.l. consents to  (a) my representation of Stephen Panigel and the Gerffert Company, Inc., a New york Corporation ("Gerffert") of which Mr. Panigel is owner and President, in connection with (i) sale of certain assets of Gerffert to Fratelli Bonella, s.r.l, and its designeees; (ii) establishment of an ongoing relationship of Mr. Panigel with Fratelli Bonella, s.r.l., and its designees; (iii) negotiations of an agreement between Mr. Panigel and Fratelli Bonella, s.r.l., regarding Mr. Panigel's participation in the outocme of a lawsuit now pending in the U.S. District Court, Southern District of New York, between Fratelli Bonella, s.r.l., and Quadriga Art, Inc. and (iv) the transactions and agreements related to all the foregoing (collectively the "Designated Matters") and (b) my continuing representation of Fratelli Bonella, s.r.l, on matters unrelated to the Designated Matters.

The waiver continues, and states: "I confirm that in the event that a dispute should arise between or among any of Mr. Panigel, Gerffert, and Fratelli Bonella, s.r.l, **I will not represent any party in any litigation arising therefrom.**

That "promise" was broken in early 2008. It was broken again, this time with impunity, on October 12, 2010, when Mr. Horowitz actually entered an appearance in this case. Mr. Horowitz never obtained or received any conflict waivers. As such, he must be disqualified.

## VI.    THE SUBSTANTIAL RELATIONSHIP TEST REQUIRES DISQUALIFICATION

In cases of successive representation, the Second Circuit has held that an attorney may be disqualified if (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client. *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir. 1983).

As discussed above, the Bonella entities are current clients of Mr. Horowitz, and so the "per se" rule applies. However, if this Court finds that the Bonella entities are only former clients of Mr. Horowitz, the "substantial relationship test" still dictates that Plaintiffs' counsel be disqualified in this case. According to the Second Circuit, where the moving party is a former client of the adverse party's counsel, disqualification should be granted "upon a showing that the relationship between the issues in the prior and present cases is 'patently clear' [or] when the issues involved have been 'identical' or 'essentially the same.' " *Gov't of India v. Cook Industries, Inc.*, 569 F.2d 737, 740 (2d Cir. 1978).

Mr. Horowitz represented the Bonella entities in matters directly related to this lawsuit. Specifically, Horowitz represented the Bonella entities in a wide variety of matters since 2003, including:

1.  Definition of Bonella's relationships with Stephen Panigel and The
    Gerffert Co., Inc., the plaintiffs in the above-captioned case;

2.  Fratelli Bonella's litigation and arbitration against Quadriga Art LLC,
    including the efforts to evaluate the merits of Fratelli Bonella's position in
    that litigation in view of Stephen Panigel's potential testimony and degree
    of cooperation and ultimately to settle that litigation in view of the
    potential degree of cooperation of Stephen Panigel;

3.  Intellectual property management and protection, including copyright,
    trade name and trademark registration, licensing and infringement matters;

4.  Contractual matters involving the sale of merchandise comprising the
    Bonella Line;

5.  Agency and distribution matters; and

6.  Selecting and interacting with other lawyers retained by Bonella.

*See* Declaration of Andrea Bonella, ¶ 4.  Certainly, the first, third and fourth issues above
directly relate to this case, as they are the subject of the Complaint and Counterclaims filed in
this case.  The second issue above is also, by Plaintiffs' counsel's own admission, the subject of
this case as Plaintiffs have sought to subpoena all files and records from the Bonella entities'
other counsel regarding the Quadriga litigation and arbitration.

## VII.   MR HOROWITZ HAS HAD ACCESS TO THE BONELLAS' CONFIDENTIAL INFORMATION

In a letter dated October 18, 2007, Mr. Horowitz wrote to the Bonella entities and stated that
"I have advised Mr. Panigel of my continuing representation of Fratelli Bonella, s.r.l. on matters
unrelated to the Designated Matters . . . [and] by virtues of my representation of them . . . I have
or may have come into possession of confidential information concerning them that would be

relevant to my representation of them in connection with the designated matters.  LEGAL
ETHICS PREVENT MY DISCLOSURES OF ANY SUCH INFORMATION TO YOU."  Mr.
Horowitz, as Intellectual Property counsel, on quarterly retainers, did, in fact, have access to
significant confidential information belonging to Fratelli Bonella.[3]

- Mr. Horowitz, as Intellectual Property counsel for Fratelli Bonella, is aware of the entire
  portfolio of work belonging to the Bonella Family, as well as the work that have
  incorporated the Bonella intellectual property.  It is the knowledge of these works that
  gives the Plaintiffs the information they needed to formulate their predicate for claims
  under 15 U.S.C. § 1121, ¶¶ 109 - 139.

- Mr. Horowitz assisted the Bonella entities with various financial transactions, both at the
  corporate level and at the individual level, and possesses privileged information relating
  to the Bonella's finances, financial transactions, and financial holdings all over the world.
  This knowledge can be used by the Plaintiff to gain an unfair advantage in this litigation.

- Mr. Horowitz had privileged information relating to the Bonella's business dealings,
  travel, holdings, bank accounts, and other information relevant to the determination of the
  motion to dismiss for personal jurisdiction that is being held in abeyance pending the
  completion of discovery.

---

[3] We will address the type of confidential information Mr. Horowitz has had access
to without listing the specific information.  Movants will gladly reveal that
information in camera should the Court so wishes.

- Mr. Horowitz was aware of all of the communications between the Bonellas, King, and Dean that were not covered by the conflict waiver and that gave rise to this action.

- Mr. Horowitz, as *de facto* general counsel to the Bonells, is intimately familiar with the corporate structure of Fratelli Bonella, s.r.l., including the existence and composition of its related entities and subsidiaries. Such knowledge was obtained as counsel for Fratelli Bonella, s.r.l.

In any event, actual "proof" that confidential information was shared is not necessary to prevail on a motion to disqualify. *Schwed v. Gen. Elec. Co.*, 990 F. Supp. 113, 116 (N.D.N.Y. 1998). Disqualification is warranted only where an attorney had **access** to confidential information. *Marshall v. State of N.Y. Div. of State Police*, 952 F.Supp. 103, 109 (N.D.N.Y. 1997); *Hammond v. Goodyear Tire & Rubber Co.*, 933 F.Supp. 197, 201 (N.D.N.Y. 1996). The attorney need not have actually obtained confidential information; it is sufficient if the attorney might reasonably have acquired information related to the subsequent representation. *Marshall*, *supra*, 952 F.Supp. at 109; *Hammond*, *supra*, 933 F.Supp. at 201. In this case, both Mr. Horowitz's admissions, and the facts presented, demonstrate that he not only had access to confidential information but that such information was used in litigating this case.

## VIII.  THE MATTERS ASSERTED IN THE COMPLAINT ARE VIRTUALLY IDENTICAL TO THE MATTERS WHICH MR. HOROWITZ ACTED AS COUNSEL FOR THE BONELLAS

To the extent that any legal wrong can be distilled from the Complaint, such allegations arise from the same circumstances as those of the prior representation.

A.   **Ongoing Relationship Between Gerffert and the Bonnellas**

Arguably, the entire Complaint is about the ongoing relationship of Gerffert with all of the Defendants, and particularly with the Bonella entities.  Specifically, the Complaint claims wrongdoing relating to the establishment of an ongoing relationship between the Bonella entities and Mr. Panigel:

> "Andrea Bonella used improper means to accomplish his interference in that said defendant (a) poisoned the negotiations between Panigel and Dean by offering Dean a percentage in the successor to W.J. Hirten greater than the ten percent (10%) Panigel had offered Dean in Gerffert-Hirten, and (b) falsely represented to King that Gerffert did not have an enforceable distributorship agreement and that King's only chance of selling W.J. Hirten profitably was to sell it to him and Dean because only by doing so would Hirten's successor be permitted to continue to distribute the Bonella artwork."

[Complaint, ¶104]

The Complaint further states that "Andrea Bonella and Hirten, LLC maliciously composed, signed and caused to be published to all wholesale and retail customers of Gerffert, and to other suppliers of religious articles who know of and had prior business dealings with Gerffert, the following false statement:

> The William J. Hirten Company is proud to announce that we are the new distributor of the Bonella line of Microperf Holy Cards and single holy cards. . . . Enclosed for your convenience is a list of merchandise that is currently available and ready to ship. . . . In reviewing the enclosed list, you may find that much of the stock available to you now was out of stock by the previous distributor."

[Complaint, ¶162].

The Complaint then claims that these statements were made "with actual malice toward Gerffert, knowing that such statements were false and with wrongful and willful intent to injure Gerffert in its reputation, business and credit, to impeach Gerffert's continuing viability as a business enterprise and supplier of religious articles, and to expose Gerffert to ridicule and contempt among its customers and potential customers. [Complaint ¶166].

These allegations involve the establishment of an ongoing relationship of Mr. Panigel with Fratelli Bonella, s.r.l., and its designees, and thus are directly related to Mr. Horowitz's representation of the Bonella entities. *See* Declaration of Andrea Bonella, ¶ 4.

### B.   Quadriga Litigation

Although the Complaint fails to mention any issues relating to the Quadriga litigation – another matter in which the Bonella entities were represented by Mr. Horowitz – Plaintiffs' counsel certainly has made it an issue in this case. As the Court is aware, there has been substantial filings and hearings relating to the information obtained by the Quadriga lawyers (Sonnenshein and Arent Fox). *See* Docket ## 54, 55, 56, 58, 60, 61, 65. In fact, in a letter to this Court dated April 1, 2010, Plaintiffs' counsel contended that the Quadriga litigation, for which Mr. Horowitz represented the Bonella entities, was at issue in this case. Specifically, Plaintiffs' counsel wrote:

> "I respectfully disagree with Mr. Reiter's statement in his letter dated
> March 25, 2010 that 'the Quadriga litigation' is nowhere addressed in the
> pleadings' [sic] of this action. Exhibit 'B' attached to the complaint in this
> action specifically mentions the Quadriga matter and the counsel fees
> which Mario Bonella is demanding that Gerffert share ..."

Docket # 61, p. 1.

## IX.   MR. MAGNOTTI SHOULD BE DISQUALIFIED AS WELL

Because Mr. Horowitz should be disqualified in this case, Mr. Magnotti, who has associated with Mr. Horowitz for the purposes of litigating this case, must be disqualified as well. Rule 1.10 provides that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8 or 1.9, except as otherwise provided therein." Rule 1.10(a); *see also Hempstead Video*, *supra*, 409 F.3d at 133 ("An attorney's conflicts are ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences."). There is a presumption that client confidences are communicated among attorneys who associate with one another in a professional capacity. *See Marshall*, *supra*, 952 F.Supp. at 110.[4]

Although the presumption that client confidences are shared within a firm may certainly be rebutted, the presumption is much stronger within a small firm than a large firm. It is possible that the circumstances of a small firm may be such that a court will not be able to determine whether the proposed or implemented screening measures will effectively prevent disclosure. *See, e.g., Papanicolaou v. Chase Manhattan Bank*, 720 F.Supp. 1080, 1086-87 (S.D.N.Y.1989) ("This Court doubts whether any Chinese walls, which are meant to be preemptive, can ever function effectively when erected in response to a motion and not prior to the arising of the conflict.").

In *Cheng v. GAF Corp.*, 631 F.2d 1052 (2d Cir.1980), the Second Circuit found that proposed screening measures were not sufficient when the conflicted attorney was "a member of a relatively small firm," because there existed "a continuing danger that [the conflicted attorney]

---

[4] Messrs Horowitz and Magnotti might argue that they do not constitute a "firm" as that term is commonly understood in the legal community. Nonetheless, "The Court will not quibble about the technical requirements of a law partnership." *Moore v. Margiotta*, 581 F. Supp. 649, 651 (E.D.N.Y. 1984). Here, it is clear that Mr Magnotti and Mr. Horowitz are sharing information on this matter and working together, and that is all that is important.

may unintentionally transmit information he gained through his prior association with [the plaintiff] during his day-to-day contact with defense counsel." *Id.* at 1058.

Other courts within this Circuit have followed Cheng 's guidance, often finding that screening procedures are inadequate in small firms. *See, e.g., Crudele v. N.Y. City Police Dep't*, 2001 WL 1033539, at *4 (S.D.N.Y. Sept. 7, 2001) ("This Court likewise concludes that the danger of inadvertent disclosure and the appearance of impropriety is sufficiently present here so as to require disqualification. Leeds, Morelli & Brown is comprised of only 15 lawyers."); *Marshall*, *supra*, 952 F.Supp. at 112 ("[T]he relatively small size of the Ruberti Firm (approximately 15 lawyers) raises doubts that even the most stringent screening mechanisms could have been effective in this case.").

Even the appearance of impropriety is of particular concern with regards to screening procedures in a small firm, *see Cheng*, *supra*, 631 F.2d at 1058-59, and in a firm as small as the Magnotti Firm-which has only 2 lawyers for the purpose of this case, the appearance of impropriety due to concerns about the efficacy of screening procedures, is heightened.

Indeed, there is little doubt that Mr. Horowitz has tainted Mr. Magnotti in this case.  By their own admission, Mr. Horowitz worked with Mr. Magnotti on this very case for at least eighteen months, without ever notifying the Bonella entities or their counsel of Mr. Horowitz's participation.  Then, a year and a half after filing this case, Mr. Magnotti let it slip that Mr. Horowitz had been involved the entire time – only because Defendants were seeking a protective order that would preclude Mr. Horowitz from viewing certain confidential documents, as Mr. Horowitz had not, up to that time, officially appeared in this case.  The insight and information that Mr. Horowitz must have shared with Mr. Magnotti during those eighteen months, and the more than three months that followed during which Defendants sought this Court's permission to

move to disqualify Plaintiffs' counsel, has made it inappropriate to allow Mr. Magnotti to continue his involvement in this case as well.[5]

## X.     CONCLUSION

For all the foregoing reasons, Defendants respectfully submit that both Mr. Horowitz and Mr. Magnotti should de disqualified from representing Plaintiffs in this case.

Dated this 1st day of November, 2010.

By:_____
OLIVIER A. TAILLIEU (admitted *pro hac vice*)
KEVIN I. SHENKMAN (admitted *pro hac vice*)
ZUBER & TAILLIEU LLP
777 S. Figueroa Street, 37th Floor
Los Angeles, California  90017
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Andrea Bonella; Fratelli Bonella, srl; and William J. Hirten Co., LLC

---

[5] If this Court has any doubt about the amount and significance of the confidential information shared with Mr. Magnotti by Mr. Horowitz, Defendants request the opportunity to take the depositions of both Mr. Horowitz and Mr. Magnotti.