UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
THE GERFFERT COMPANY, INC., et al.,

              Plaintiffs,

  - against -

JAMES DEAN, et al.,

              Defendant.
----------------------------------------------------------X

**MEMORANDUM AND ORDER**

09 CV 266 (MKB)

On January 22, 2009, plaintiffs, The Gerffert Company, Inc. and Stephen Panigel (together, "Gerffert" or "plaintiffs"), filed this action against defendants James Dean, Dolores King, William J. Hirten Co. LLC ("Hirten"), HMH Religious Manufacturing Co., Inc., Andrea Bonella, Mario Bonella, Gianfranco Bonella, Fratelli Bonella, s.r.l., and "John Doe" and "Jane Doe," d/b/a Fratelli Bonella, s.r.l. ("Fratelli Bonella") (together, "defendants"), seeking damages based on defendants' alleged breach of an agreement granting Gerffert the exclusive right to market and distribute the "Bonella Line" of religious artwork in the United States.

A. <u>Plaintiffs' Discovery Requests</u>

On March 26, 2012, plaintiffs submitted a letter seeking permission to file a motion to compel defendants Hirten, Fratelli Bonella, srl., and Andrea Bonella (the "Bonella" defendants) to produce responses to certain discovery requests that plaintiffs contend were not adequately responded to and to negotiate a protective order. (Pls.' 3/26/12 Ltr.[1] at 1).

---

[1] Citations to "Pls.' 3/26/12 Ltr." refer to plaintiffs' letter to the Court, dated March 26, 2012.

1

With respect to plaintiffs' interrogatories dated January 28, 2010, plaintiffs contend that defendants' April 12, 2010 responses were "wholly incomplete." (Id. at 2). First, plaintiffs complain that they were only signed by counsel instead of complying with the mandate of Fed. R. Civ. P. 33(b), which requires either the party or, if a corporate entity, an officer or agent of that entity to verify the responses to interrogatories. (Id.)

Plaintiffs also complain that defendants "arbitrarily stopped responding" to plaintiffs' interrogatories at a certain point,[2] claiming that plaintiffs had exceeded the maximum number of interrogatories allowed by the Federal Rules. (Id. at 3). Plaintiffs argue that, contrary to defendants' contention that these interrogatories contain discrete subparts, each of their interrogatories addresses "a single, uniform fact." (Id.) However, in listing the interrogatories to which defendants have failed to respond sufficiently, it becomes clear that plaintiffs propounded more than the 25 permitted by the Rules. (See id. (noting that Hirten failed to respond to Interrogatories 1, 3, 4, 5, 6, 8, 10-32; that Fratelli Bonella failed to respond to Interrogatories 2, 4, 5, 8-10, 12, 13, 15-19, 22-33; and that Andrea Bonella failed to respond to Interrogatories 5, 6, 11-35)). Plaintiffs also complain that defendants have raised "baseless, inapplicable stock objections." (Id.)

Plaintiffs also complain that defendants failed to provide adequate responses to plaintiffs' document requests. (Id.) Specifically, Hirten refused to provide documents responsive to Nos. 2, 3, 7, 9-12, 14-21, 23-32, 34-39; Fratelli Bonell refused to provide documents responsive to Nos. 7, 10, 14, 16, 17, 19-27, 29-34; and Andrea Bonella refused to produce documents responsive to

---

[2] It appears as if the Bonella defendants stopped answering at Interrogatory No. 11 and 22, respectively, and Hirten stopped at 15. (Pls.' 3/26/12 Ltr. at 3 (citing Exs. H, G, and I)).

2

Nos. 3, 7, 13, 16-23, 25, 27-31, and 33. (Id. at 4). Among the objections raised by Hirten are work product, attorney-client privilege and joint defense privilege. (Id. at 5). It is unclear whether a privilege log, as required by Federal Rule of Civil Procedure 26(a), has been provided. Finally, plaintiffs complain that even where there has been no objection to producing documents, defendants have not produced a "single" document to plaintiffs. (Id.)

In response, defendants contend that plaintiffs have "refused to meet and confer in good faith," filing their pre-motion conference letter requesting permission to move to compel less than two business days after they sent defendants their first meet-and-confer letter, thus giving defendants no time to respond. (Defs.' 4/6/12 Ltr.[3] at 1). Defendants further contend that the "amount and scope of the irrelevant details demanded and documents requested" further demonstrate that the discovery propounded by plaintiffs was designed to harass defendants and create an undue burden. (Id. at 2). Not only do defendants point to the number of interrogatories contained in plaintiffs' request, but they also challenge the relevance of some interrogatory requests, specifically the request for defendant Bonella's Facebook, MySpace and Twitter passwords (id. at 3), and some document requests, including telephone records of defendant reflecting any telephonic communications relating to any fact or issue raised in the pleadings. . . ." (Id.)

Finally, defendants dispute the assertion that they have failed to produce "'a single document to Plaintiffs.'" (Defs.' 4/16/12 Ltr.[4] at 1 (quoting Pls.' 3/26/12 Ltr. at 5)). Defendants

---

[3]Citations to "Defs.' 4/6/12 Ltr." refer to defendants' letter to the Court, dated April 6, 2012.

[4]Citations to "Defs.' 4/16/12 Ltr." refer to defendants' letter to the Court, dated April 16, 2012.

contend that responsive documents were produced to plaintiffs' former counsel, Mr. Magnotti, in June 2010. (Id.) Defendants offer to re-produce these documents if plaintiffs' new counsel is unable to locate them. (Id.)

Having reviewed the parties' papers, the Court **ORDERS** as follows:

The parties shall meet and confer regarding the discovery disputes on or before June 12, 2012. Before meeting, plaintiffs are Ordered to select 25 interrogatories (including subparts) and notify defendants that they seek responses to these interrogatories. If, after the meet and confer, there remain any unresolved issues, the plaintiff is to detail in a letter any remaining deficiencies in defendants' discovery responses by June 15, 2012; defendants' response is due June 19, 2012.

To the extent that defendants are claiming a privilege with respect to any of the documents sought, they shall prepare and serve a privilege log in accordance with the Rule 26(a) of the Federal Rules of Civil Procedure, on or before June 12, 2012.

B. Defendants' Discovery Requests

By letter dated March 30, 2012, defendant Hirten seeks permission to file a motion to compel plaintiffs to provide responses to Hirten's discovery requests. (Hirten 3/30/12 Ltr.[5] at 1). Defendant Hirten first contends that despite its efforts to meet and confer, "Plaintiffs . . . refused to cooperate with Hirten's efforts to resolve *even one* of the outstanding discovery issues without the Court's involvement." (Id. (emphasis in original)). Thus, despite an agreement to make documents available after the parties' March 6, 2012 meet and confer, plaintiffs failed to serve

---

[5]Citations to "Hirten 3/30/12 Ltr." refer to defendant Hirten's letter to the Court, dated March 30, 2012.

4

documents that they had previously agreed to produce. (Id. at 1-2). When Hirten sent a follow-up letter, dated March 23, 2012, with four questions, plaintiffs refused to discuss the issues further. (Id. at 2 (citing Ex. D)).

1. Defendants' Interrogatories

With respect to plaintiffs' responses to interrogatories, Hirten asserts that it served six interrogatories, asking plaintiffs: (1) to identify the intellectual property rights that they claim have been infringed (Inter. No. 1); (2) to set forth the terms of any agreement between plaintiffs and defendants (Inter. No. 2); (3) to identify the defendants' actions that constituted a breach of any agreement (Inter. No. 4); and (4) to list the "total revenue attributable to sales of artwork from Fratelli Bonella" (Inter. No. 6). In responding, plaintiffs either referred to "documents produced herewith" or, in response to Interrogatory No. 6, noted simply "70-75% of Gerffert's sales," without providing revenue numbers. (Id. at 2).

In response, plaintiffs contend that it is entirely proper to respond to interrogatories by reference to responsive documents. (Pls.' 4/16/12 Compel Ltr.[6] at 1). Furthermore, they claim that they offered to supplement their responses if defendants gave responses to plaintiffs' discovery; "defendants declined this exchange." (Id.)

Hirten responds by stating that plaintiffs have failed to clarify the information sought in their own discovery requests and maintain their position that defendants should be required to respond to what defendants characterize as "75-interrogatory subparts," which are otherwise

---

[6]Citations to "Pls.' 4/16/12 Compel Ltr." refer to plaintiffs' letter to the Court in response to defendant Hirten's March 30, 2012 letter, dated April 16, 2012.

5

improper. (Hirten's 4/17/12 Ltr.[7] at 2).

In this instance, given that the parties have attempted to meet and confer without success, plaintiffs are Ordered to supplement their responses to Hirten's Interrogatories Nos. 1, 2, 4, and 6. Although referencing responsive documents is permitted by the Federal Rules, to simply state "see documents produced herewith" without a reference to Bates numbers or other description identifying the documents responsive to each request is insufficient where there are over 3,000 pages that have been produced. Accordingly, the plaintiffs are **ORDERED** to provide written responses to each of these Interrogatories, along with references to relevant documents by Bates no. or other reasonable designation on or before June 15, 2012.

### 2. Defendant's Requests for Admissions

Defendant Hirten served its First Set of Requests for Admission Propounded to Plaintiffs Stephen Panigel and the Gerffert Company, Inc. on January 29, 2010. In their responses dated April 20, 2010, plaintiffs refuse to either admit or deny any of the 17 requests. (Hirten 3/30/12 Ltr. at 3 (citing Ex. J)).

Plaintiffs are **ORDERED** to respond to Request Nos. 1-17 on or before June 15, 2012.

### 3. Defendant's Request for Production of Documents

Defendant Hirten complains that although plaintiffs responded to its First Request for Production of Documents, Hirten has requested that plaintiffs confirm that they have produced

---

[7]Citations to "Hirten's 4/17/12 Ltr." refer to defendant Hirten's letter to the Court, dated April 17, 2012.

all responsive documents except for the documents relating to personal jurisdiction. (Id. at 3). Plaintiffs have refused to indicate if any documents have been withheld and, if so, why. (Id.)

In response, plaintiffs argue that they have no obligation to certify to defendants that all responsive documents have been produced. (Pls.' 4/16/12 Compel Ltr. at 1). Plaintiffs have failed to explain why they have not produced the documents relating to personal jurisdiction.

Accordingly, plaintiffs are **ORDERED** to proved an affidavit from someone with authority and knowledge either confirming that all responsive documents have been produced or if not, provide a privilege log pursuant to Federal Rule of Civil Procedure 26(a), justifying why certain documents have been withheld. Plaintiffs are Ordered to provide this affidavit on or before June 15, 2012.

With respect to the documents relating to personal jurisdiction, plaintiffs are **ORDERED** to produce those documents on or before June 15, 2012.

C. The Protective Order

Finally, the parties note that they are still unable to reach agreement on the terms of the protective order which the parties have been negotiating for several years. (Pls.' 3/26/12 Ltr. at 1-2; Defs.' 4/6/12 Ltr. at 2). According to defendants, plaintiffs' new attorneys have sent an entirely new version of the protective order which defendants describe as "internally inconsistent" and as failing to resolve the issues previously identified. (Defs.' 4/6/12 Ltr. at 2). Thus, to the extent that plaintiffs accuse defendants of dilatory tactics, defendants take the position that before they produce documents, they want assurances that plaintiffs will not misuse their information. (Id.)

7

In reviewing the parties' submissions, it appears that there are three main areas of dispute: (1) the definition of "confidential;" (2) the definition and scope of "Attorneys' Eyes Only" documents; and (3) the conditions under which "Qualified Individuals" may receive "Attorneys' Eyes Only" documents. (Pls.' 4/16/12 Ltr.[8] at 1).

### 1. "Confidential" Documents

According to plaintiffs, the parties agree in Paragraph 1 of the Proposed Stipulated Protective Order (the "Proposed Order") that confidential information covers "any discovery material which the producing or responding party reasonably believes contains or discloses proprietary information, confidential customer information, personal or confidential employee information or other similar sensitive information of a non-public nature." (Id. at 2). Plaintiffs complain that defendants have proposed adding some additional language that plaintiffs believe would be inconsistent with the above-quoted definition. (Id.)

In response, defendants disagree that the language is inconsistent, but nevertheless have agreed to delete the suggested language. (Defs.' 4/16/12 Ltr. at 2). Thus, that language will not be included in the final Order.

### 2. Definition and Scope of "Attorneys' Eyes Only" Documents

The parties have not been able to agree on the scope or definition of "Attorneys' Eyes Only" documents. Plaintiffs have proposed designating materials "Attorneys Eyes Only" if "the

---

[8]Citations to "Pls.' 4/16/12 Ltr." refer to plaintiffs' letter to the Court, dated April 16, 2012.

designating party reasonably believes that the materials are extremely sensitive and disclosure to the opposing party would result in significant competitive injury to its business." (Pls.' 4/16/12 Ltr. at 2). Defendants have proposed instead substituting "serious harm that could not be avoided by less restrictive means," in lieu of "significant competitive injury to its business." (Defs.' 4/16/12 Ltr., Ex. 2). In addition, defendants have included a lengthy list of types of information that would potentially fall within this category. (Id.) Plaintiffs counter with the argument that the language is "less restrictive" than the description of "Confidential" information that the parties have agreed upon and that the enumeration in defendants' list actually "expends [sic] upon the already-broad definition in the preceding sentence." (Pls.' 4/16/12 Ltr. at 3).

Although the Court disagrees with plaintiffs' suggestion that the language proposed by defendants somehow broadens the categories of documents covered by this section, the Court notes that the purpose of "Attorneys' Eyes Only" designations is generally to protect one party from injury – usually injury to the party's business – that might occur if the information is revealed to the party's competitor. Other categories of particularly sensitive information may relate to an individual's health or mental status. In this instance, since the main harm contemplated is one of harm to the parties' respective competing businesses, the Court proposes that the parties compromise on language that contains a few specific examples of the type of information to be covered, with the understanding that the list is not all inclusive:

> The designating party may designate any Confidential document, thing, material, testimony or other information derived therefrom as "Attorneys' Eyes Only" if the designating party can show good cause[9] that the materials contain extremely sensitive trade secrets

---

[9] See Cumberland Packing Corp. v. Monsanto Co., 184 F.R.D. 504 (E.D.N.Y. 1999) (discussing standards for designation of documents as protected).

9

or commercial information, such as pricing, product development, profits, and future marketing strategies, that if disclosed to the opposing side could result in serious competitive or other harm, that cannot be avoided by less restrictive means.

3. "Attorneys Eyes Only" Documents and "Qualified Individuals"

Finally, the parties cannot agree on the conditions under which "Attorneys' Eyes Only" information may be disclosed to experts or consultants. (Pls.' 4/16/12 Ltr. at 4). Defendants want a notice provision contained in the protective order that would require notice to be given prior to a party's disclosure of "Attorneys' Eyes Only" materials to an expert, so that the designating party may determine if the individual being provided the materials is someone who may be otherwise prohibited from gaining access to confidential information or who may have a potential conflict of interest. (Defs.' 4/16/12 Ltr. at 2-3). Plaintiffs object to having to give prior notice, claiming that it provides the other party with the status of its preparation of the case and runs afoul of the attorney-work product doctrine. (Pls.' 4/16/12 Ltr. at 4).

Given the problems in this case that have already occurred with respect to confidences and secrets, the Court finds that a simple notice stating that "Attorneys' Eyes Only" information may be given to a specific expert does not reveal much in the way of case preparation and may be avoided by not disclosing "Attorneys' Eyes Only" information to a particular expert if the desire is to simply consult with a non-testifying expert or consultant. The Stipulation currently contains a provision requiring any experts or consultants who review even Confidential information to execute an agreement to be bound by the terms and conditions of the Stipulation. Thus, simply providing advance notice that this type of highly sensitive and confidential information is being

10

provided to a specific expert or consultant seems appropriate under the circumstances.

**SO ORDERED.**

Dated: Brooklyn, New York
June 6 , 2012

/s/  CHERYL  POLLAK
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

11