UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

THE GERFFERT COMPANY, INC. &
STEPHEN PANIGEL,

                      Plaintiffs,

       -against-                               09-CV-266 (PKC)

JAMES DEAN, *et al.*,

                      Defendants.

----------------------------------------------------------------x

## MEMORANDUM & ORDER ON
## MARCH 14, 2014 ORDER TO SHOW CAUSE
## REGARDING SUBJECT MATTER JURISDICTION

On March 14, 2014, Plaintiffs were directed to show why the Court has subject matter jurisdiction over their "Diversity of Citizenship Claims" (Counts 1-9). (*See* Order to Show Cause ("Order"), dated Mar. 14, 2014; Dkt. No. 346 ("Pls.' Br.").) Based on the absence of complete diversity between the parties and the unrelated nature of Plaintiffs' "Diversity of Citizenship Claims" to their federal Lanham Act claim, the Court finds that it lacks subject matter jurisdiction over the diversity claims, and dismisses them without prejudice to be re-filed in state court.

I.  Background

For many years, Plaintiffs[1] and Defendants[2] have allegedly been engaged in a war over the market for religious merchandise. (*See* Pls.' Br., at 2-3 (referring to the Complaint as "the story of how the defendants stole all that the Gerffert company had built over the course of more than 50 years").)[3] Plaintiffs' Complaint separately sets forth two sets of factual allegations to support two sets of claims, denoted as (i) "Diversity of Citizenship Claims" (Counts 1-9) and (ii) "Claims Arising Under 15 U.S.C. § 1121, *et seq* [*i.e.*, the federal Lanham Act] and Pendent State Claims" (Counts 10-16). (Compl., at 5, 26.)

Under the heading, "Factual Allegations Regarding Diversity of Citizenship Claims," Plaintiffs allege that:

---

[1] Plaintiffs are The Gerffert Company, Inc. ("Gerffert"), a New York distributor of religious merchandise (*e.g.*, holy cards and religious artwork and certificates) and other items, and its owner, Stephen Panigel ("Panigel"). (Dkt. No. 1 ("Compl.") ¶¶ 2-3, 32.)

[2] Defendant Fratelli Bonella, s.r.l. (formerly, Fratelli Bonella) ("Bonella"), an Italian manufacturer of religious artwork, is owned and operated by members of the eponymous family, including Defendants Andrea Bonella ("Andrea"), Mario Bonella, and Gianfranco Bonella. (Compl. ¶¶ 5, 8-9, 10-12, 17.) Defendant HMH Religious Manufacturing Co., Inc. ("HMH"), a Rhode Island manufacturer of religious-themed jewelry, is owned and operated by Defendant James Dean ("Dean"), who also worked as a "commissioned salesman" for Gerffert. (*Id.* ¶¶ 13, 29.) Non-party William J. Hirten Company, Inc. ("Old Hirten"), a New York distributor of religious merchandise (*e.g.*, crucifixes, rosaries, statuaries, communion items, and prayer books), is owned and operated by Defendant Dolores King ("King"), a citizen of New York. (*Id.* ¶¶ 6, 31-32; *see also* Dkt. No. 31 ¶ 6 ("King admits that she is a citizen of the State of New York[.]").) Defendant William J. Hirten Co., LLC ("New Hirten"), a Delaware distributor of religious merchandise, is owned and operated by Bonella, Dean, *and* King as a limited liability company. (Compl. ¶ 50; *see also* Dkt. Nos. 332-7 ¶ 1 ("[King is] the Vice President and one-third owner of [New Hirten][.]"); 295 ¶ 7 ("[New Hirten] admits that [it] is a Delaware limited liability company[.]").)

[3] Plaintiffs also reference "the *Lord of the Rings* trilogy," a fictional account of the battle for Middle Earth with religious themes, to describe their longstanding conflict with Defendants. (Pls.' Br., at 2.)

- For the past 50 years, until around 2007, Gerffert was the "exclusive U.S. distributor" of Bonella's artwork, pursuant to distributorship agreements with Bonella (*id.* ¶¶ 18-19);

- In 2004, Panigel devised a "plan to increase U.S. sales of Bonella artwork by expanding the types and categories of religious merchandise Gerffert would sell." Panigel thus began discussions with King and Dean regarding Gerffert's potential acquisition of Old Hirten and HMH, which would enable Gerffert to establish a new "'one stop shop' for the purchase of religious articles" called "Gerffert-Hirten, LLC" by combining the three companies (*id.* ¶¶ 28, 32-33);

- Thereafter, in anticipation of the potential acquisition, Panigel allegedly:

    - Invested time and money into redeveloping Old Hirten's line of merchandise and renovating the second floor of the Gerffert factory to accommodate Old Hirten (*id.* ¶¶ 38-39);

    - Reached an agreement with Dean for his transfer of HMH to "Gerffert-Hirten, LLC," in exchange for Dean getting a 10% ownership interest and Gerffert a 90% ownership interest in the new company (*id.* ¶ 34);

    - Arranged for Gerffert's acquisition of non-party Regina Manufacturing Company, Inc. ("Regina"), another Rhode Island manufacturer of religious-themed jewelry, "with the intention of combining Regina's jewelry line with HMH's" (*id.* ¶ 33); and

    - Invested in "redeveloping and recapitalizing" HMH and Regina and the combination thereof (*id.* ¶ 39);

- Bonella "solicited, requested, approved and endorsed" Panigel taking the above steps to increase its U.S. sales (*id.* ¶ 36);

- Once Panigel had begun taking these steps, however, King, at the behest of Dean and Andrea, became more difficult to negotiate with, and, in March 2007, King terminated negotiations with Panigel for Gerffert's acquisition of Old Hirten (*id.* ¶¶ 40-43);

- In April 2007, Andrea made an alternative proposal to Panigel: forming a new company that would acquire Old Hirten and distribute a broader line of merchandise, using Bonella artwork, with Bonella, Dean, and Panigel as one-third (33-⅓%) owners (*id.* ¶ 46); and

- Finally, in September 2007, after Panigel rejected Andrea's proposal, Bonella, Dean, and King formed New Hirten, which acquired Old Hirten and began distributing the "Hirten merchandise line," including its newly-developed Bonella-related merchandise (*id.* ¶ 50).

Based on these (*pre*-New Hirten) factual allegations, Plaintiffs claim that Defendants breached and/or tortiously interfered with Gerffert's distributorship agreements with Bonella and with Gerffert's agreement with Dean for the transfer of HMH; unjustly enriched themselves with the benefits of the investments by Gerffert in Old Hirten, HMH, and Regina; and otherwise acted improperly in the negotiations over Gerffert's potential acquisition of Old Hirten and HMH. (*See id.* ¶¶ 17-108.)

By contrast, under the heading, "Factual Allegations Regarding Claims Arising Under 15 U.S.C. § 1121, *et seq* [*i.e.*, the federal Lanham Act] and Pendent State Claims," Plaintiffs make (*post*-New Hirten) factual allegations, including, for instance, that New Hirten:

- "[O]ffers the same or similar products and services as provided by Gerffert and caters to potential customers in the same or similar geographical area, within the same or similar price range" (*id.* ¶ 119);

- Has diverted Gerffert's customers using its "name, reputation and proprietary work product" and, indeed, in the Summer of 2008, these customers reportedly received catalogs from New Hirten which contained the "proprietary stock numbers, item numbers, photography, header language or page layouts" that Gerffert had developed for the "same merchandise" in its prior catalogs (*id.* ¶¶ 121-24);

- Has made other misstatements about Gerffert and New Hirten to Gerffert's customers (*id.* ¶¶ 162-63); and

- Uses "Gerffert's confidential customer list, sources of supply and proprietary stock numbering system," stolen by Dean (*id.* ¶ 172).

These factual allegations support Plaintiffs' claims that, *after* forming New Hirten, Defendants infringed upon Gerffert's rights under Section 43(a) of the federal Lanham Act, 15 U.S.C. § 1125(a), by using Gerffert's "trade dress" in New Hirten's catalogs, and that Defendants' conduct also violated other state-law causes of action, including "Injurious Falsehood" and "Misappropriation of Trade Secrets." (*See id.* ¶¶ 109-84; *see also* Dkt. No. 336, at 8-11

(characterizing the federal Lanham Act claim as a "trade dress infringement claim" relating to New Hirten's catalogs).)

On January 22, 2009, Plaintiffs filed the Complaint. Discovery was conducted over the course of several years. Four years later, on March 8, 2013, Judge Margo K. Brodie, who was previously assigned to this case,[4] set a briefing schedule for Defendants' summary judgment motion. (Minute Entry, dated Mar. 8, 2013.) On October 29, 2013, the parties fully briefed that motion, currently pending before the Court. (Dkt. No. 331.)

On March 14, 2014, the Court issued the Order to Show Cause regarding its subject matter jurisdiction over Plaintiffs' "Diversity of Citizenship Claims," citing the fact that King and New Hirten, by virtue of King's one-third ownership, are citizens of New York just like Plaintiffs. *See Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000) (Sotomayor, J.) (collecting cases for the proposition that "a limited liability company has the citizenship of its membership"). Because these claims are brought, in part, against King and New Hirten as non-diverse Defendants, their presence destroys the Court's original jurisdiction over *all* the pre-New Hirten claims, which are based on diversity of citizenship (28 U.S.C. § 1332). *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 554 (2005) (Kennedy, J.) ("Incomplete diversity destroys original jurisdiction with respect to all claims[.]").[5]

In response, Plaintiffs argue, for the first time, that—despite the fact that Counts 1-9 *are* denoted as "Diversity of Citizenship Claims" in the Complaint—the Court "should exercise its

---

[4] Prior to Judge Brodie, this case was assigned to Judge Kiyo A. Matsumoto.

[5] *See also K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 130 (2d Cir. 1995) (stating that, even though "the second and third claims involved only [the plaintiff], a citizen of New York and Connecticut, and [one defendant], a citizen of Delaware and Wisconsin," "complete diversity between all plaintiffs and all defendants was absent since [other] defendants . . . and [the] plaintiff . . . are all citizens of New York" with respect to the remaining state-law claims).

supplemental jurisdiction over" these claims, because they involve the "same case or controversy" as the federal Lanham Act claim (Count 10) over which the Court has original jurisdiction (15 U.S.C. § 1121; 28 U.S.C. § 1331). (Pls.' Br., at 1.) Plaintiffs, in other words, ask that the Court assert the same supplemental jurisdiction over the previously-denominated diversity claims that it asserts over the state-law claims brought in conjunction with Plaintiffs' federal Lanham Act claim.

II. Discussion

*A. Legal Standard*

"[I]n any civil action of which the district courts have original jurisdiction, the district courts *shall* have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the *same case or controversy* under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (emphasis added). To satisfy the "same case or controversy" requirement, the state-law claims must share a "'*common nucleus of operative fact*'" with the federal claim, which means that "the facts underlying the federal and state claims substantially overlap[]" or "presentation of the federal claim necessarily br[ings] the facts underlying the state claim before the court." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000) (emphasis added) (quoting *United Mine Workers v. Gibbs* ("*Gibbs*"), 383 U.S. 715 (1966) (Brennan, J.)).[6]

Even if the state-law claims satisfy the "same case or controversy" requirement, and are thus properly subject to the district court's supplemental jurisdiction, the district court still "*may* decline to exercise supplemental jurisdiction," under "enumerated circumstances" and upon

---

[6] *See also Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (same).

6

further consideration of "judicial economy, convenience, and fairness," *i.e.*, the "*Gibbs* factors." 28 U.S.C. § 1367(c) (emphasis added); *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 446-47 (2d Cir. 1998).

The distinction between subsection 1367(a) and subsection 1367(c) is significant: the former establishes the district court's *authority* to consider the state-law claims based on its supplemental jurisdiction, whereas the latter establishes its *discretion* not to consider them, when such authority would otherwise exist. *See Itar-Tass*, 140 F.3d at 445 ("28 U.S.C. § 1367 . . . provides federal judges with both the power to exercise supplemental jurisdiction and the discretion, in specified circumstances, to decline to entertain such claims.").[7] Only the latter incorporates the *Gibbs* factors. *See id.* at 446-47.

### B. Analysis

While it is regrettable that the parties have litigated this case for so long before the jurisdictional issue was identified, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction," and "[o]bjections to subject-matter jurisdiction . . . may be raised at *any time*." *Henderson v. Shinseki*, __ U.S. __, 131 S. Ct. 1197, 1202 (2011) (Alito, J.) (emphasis added).[8]

There is no dispute that, as raised by the Order to Show Cause, the Court lacks original jurisdiction over Counts 1-9, due to the absence of complete diversity (28 U.S.C. § 1332). (*See*

---

[7] *See also Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) ("The fact that the district court has the power to hear these supplemental claims [under 28 U.S.C. § 1367(a)] does not mean, of course, that it must do so. Instead, it may decline to exercise its power based on the factors laid out in 28 U.S.C. § 1367(c). This decision is left to the exercise of the district court's discretion.").

[8] *See also ACCD Global Agric. Inc. v. Perry*, No. 12-CV-6286, 2013 WL 840706, at *1 (S.D.N.Y. Mar. 1, 2013) ("[F]ederal courts are *mandated* to *sua sponte* examine their own jurisdiction at every stage in the litigation[.]") (emphasis in original).

7

Pls.' Br., at 1 (conceding that Counts 1-9 are "denominated the 'diversity of citizenship claims,'" and that there is an "absence of complete diversity between the parties").) The sole issue is whether the Court has the power to assert its supplemental jurisdiction over Counts 1-9, pursuant to 28 U.S.C. § 1367(a). The Court finds that it does not.

Contrary to Plaintiffs' arguments (*see* Pls.' Br., at 2-5), Counts 1-9 do not emanate from the same "nucleus of operative fact" as the federal Lanham Act claim (Count 10), and thus fail to encompass the "same case or controversy" needed to establish the Court's supplemental jurisdiction. *Lyndonville*, 211 F.3d at 704 (quotations omitted). The fact that Plaintiffs, by way of separate headings in the Complaint, distinguished the factual allegations relating to Counts 1-9, *i.e.*, their diversity claims, from the factual allegations relating to Counts 10-16, *i.e.*, their federal Lanham Act and related state-law claims, is difficult to ignore. *See supra* Section I.

Indeed, the federal Lanham Act claim neither "substantially overlap[s]" with, nor "necessarily" elicits, the factual allegations supporting Counts 1-9. *Lyndonville*, 211 F.3d at 704. For the federal Lanham Act claim, Plaintiffs assert—based on their post-New Hirten factual allegations—that the New Hirten catalogs appropriated "distinctive" and "nonfunctional" aspects of Gerffert's "trade dress," *i.e.*, its prior catalogs, that are likely to cause "confusion" over the source of Bonella-related merchandise. *E.g.*, *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir. 1997) (citing the elements of trade dress infringement claims). The federal Lanham Act claim does not depend on any pre-New Hirten factual allegations that involve the 2004 agreement between Gerffert and Dean regarding the transfer of HMH; Gerffert's investments in Old Hirten, HMH, and Regina between 2004 and 2007; or the

negotiations about the potential acquisition by Gerffert of Old Hirten and HMH, which ended in late 2007. *See supra* Section I.[9]

While the factual allegation of distributorship agreements between Gerffert and Bonella, dating as far back as 1957, might provide context for the federal Lanham Act claim, it is not necessary for establishing any element of that claim, such as whether certain aspects of Gerffert's prior catalogs were "distinctive," with respect to identifying Gerffert as the source of Bonella-related merchandise. *Fun-Damental Too*, 111 F.3d at 999. To wit, "while facts relevant to [Counts 1-9] might provide background with respect to the [federal Lanham Act claim], more is required." *Burgess v. Omar*, 345 F. Supp. 2d 369, 372 (S.D.N.Y. 2004) (finding a lack of supplemental jurisdiction over counterclaims which "focus on what amounts to alleged looting of the [business] by the plaintiff over a five to six year period," whereas the federal Exchange Act claims only "focus[] on what transpired during a relatively short period . . . in relation to [the plaintiff's] sale of the business").

---

[9] Notably, there is no intent requirement for federal Lanham Act claims. *See CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 83 (2d Cir. 2013) ("[The plaintiff's] Lanham Act section 43(a) claim did not require it to prove that [the defendant] intended to infringe on its trademark, as such a claim does not require proof of intent to deceive.") (quotations omitted). At the same time, "evidence that the imitative mark was adopted in bad faith" is one of eight, *non-dispositive* factors that the district court may consider in determining the "likelihood of confusion" element. *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009). The "bad faith" factor refers to copying with an "intent to confuse," and not an "intent to copy." *Id.* at 117 (quotations omitted). In this case, the factual allegations about the prior negotiations, which purportedly led to Defendants creating New Hirten and taking over the distribution of Bonella-related merchandise, might show that Defendants intended to *copy* Gerffert's catalogs, but not that they intended to *confuse* customers into thinking that New Hirten and Gerffert were the same company. If anything, the factual allegations about the statements that Defendants made *after* New Hirten's formation are more relevant in showing their intent to confuse and, for that reason, these post-New Hirten factual allegations are properly the basis for state-law claims over which the Court *does* have supplemental jurisdiction.

Plaintiffs' secondary argument—essentially, that the Court's interests in judicial economy, convenience, and fairness favor its exercise of supplemental jurisdiction over Counts 1-9 (*see* Pls.' Br., at 5-7)—is inapposite. As discussed above, the *Gibbs* factors only apply, when the district court is deciding to *decline* the exercise of supplemental jurisdiction over state-law claims which it is already entitled to consider. *See Itar-Tass*, 140 F.3d at 446-47. Here, the Court has no such jurisdiction to decline to exercise, despite considerations of judicial economy, convenience, or fairness.

III. Conclusion

The Court DISMISSES, *without* prejudice to be re-filed in state court, Counts 1-9 for lack of subject matter jurisdiction.

SO ORDERED:

 /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: June 12, 2014
       Brooklyn, New York